UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERSTATE NET BANK, | Civil Action No. |
| Plaintiff, | 10-cv-4578 (NLH)(KMW) |
| v. | **OPINION** |
| ACER PACKAGING & SUPPLIES, INC., BECKY DIAZ, also known as Becky Diaz-Prata, and LOUIS PRATA, | |
| Defendants. | |

**APPEARANCES**:

Louis G. Rubino, Esquire
White & Williams
Liberty View
457 Haddonfield Road
Suite 400
Cherry Hill, N.J. 08002
*Attorney for Plaintiff Interstate Net Bank*

Justin Daniel Santagata, Esquire
Kaufman Bern Deutsch Leibman
One Executive Drive
Suite L-15
Fort Lee, N.J. 07024
*Attorney for Defendants Acer Packaging & Supplies, Inc., Becky Diaz-Prata, and Louis Prata*

**HILLMAN, District Judge**

Plaintiff, Interstate Net Bank (or, "Interstate"), brought suit against Defendants, Acer Packaging & Supplies, Incorporated (or, "Acer"), Becky Diaz-Prata, and Louis Prata (collectively, "Defendants"), alleging default on loans.  In turn, Defendants filed counterclaims against Interstate.  Interstate now moves for

judgment on the pleadings against Defendants' counterclaims. Defendants cross-move to stay these proceedings.

For the following reasons, Defendants' Cross-motion to Stay is granted in part, and while the parties comply with the instructions set forth in this Opinion, the Court will stay any further consideration of Interstate's Motion for Judgment on the Pleadings and Defendants' cross-motion.

## I.   JURISDICTION

This Court exercises subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties in this case.  Plaintiff, Interstate Net Bank, is a state-chartered commercial bank incorporated in the State of New Jersey with its principal place of business in Cherry Hill, New Jersey.  Defendant, Acer Packaging & Supplies, is incorporated in the State of New York with its principal place of business in Bronx, New York.  Defendant, Becky Diaz-Prata is a citizen of the State of New York.  Defendant, Louis Prata, is a citizen of the State of New York.  The amount in controversy exceeds $75,000.

## II.   BACKGROUND

In April 2006, Interstate and Acer entered into a business loan agreement in which Interstate would provide to Acer, a small

business, a $250,000 line of credit.[1]  Securing the line of credit was a lien on Acer's accounts receivable.  When crafting and entering into the agreement, Interstate encouraged Acer to forego any independent attorney review and to simply rely upon Interstate's attorney.

In or around July 2008, Acer, consistent with the business loan agreement, requested an advance on its line of credit.  Interstate denied the request, vaguely asserting its inability to honor the terms of the loan agreement based on "some undefined authority."  (Def.'s Counterclaim at 8, § 15).

In or around January 2010, the parties negotiated an agreement to consolidate Acer's debt owed on the discontinued line of credit with a term loan Interstate had made to Becky Diaz-Prata, Acer's owner.  As part of the consolidated loan agreement, Acer would pay down part of the overall debt and, in turn, Interstate would release the lien on Acer's accounts receivable, freeing Acer to secure additional credit.  The parties preliminarily agreed to the terms, and upon Interstate's request, Louis Prata, Ms. Diaz-Prata's husband, submitted a written offer to Interstate memorializing the terms of the agreement.  However, despite repeated attempts to follow up on

---

[1] Given that the present matter under consideration is Interstate's Motion for Judgment on the Pleadings, the recitation of non-jurisdictional facts reflects and accepts those asserted in Defendants' counterclaims.

3

the proposed agreement, Prata could not reach anyone at Interstate.  Finally, during a meeting in July 2010, an Interstate representative denied that any agreement had ever been discussed or finalized between the parties.

Around that same time, Interstate filed suit in the Superior Court of New Jersey against Acer, Becky Diaz-Prata, and Louis Prata, alleging default on the business loan agreement as well as Diaz-Prata's term loan.  Several months later, Defendants removed Interstate's suit from New Jersey Superior Court to this Court.

On September 17, 2010, New Jersey's Department of Banking and Insurance appointed the Federal Deposit Insurance Corporation (or, "FDIC") as a receiver for Interstate.  Days later, Defendants answered Interstate's complaint and asserted counterclaims against Interstate, alleging breach of contract, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, consumer fraud in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, and slander of title.  On November 11, 2010, Defendants filed a claim with the FDIC, asserting the same grounds as those pled in Defendants' counterclaims.

Interstate moves for judgment on the pleadings against Defendants' counterclaims.  Defendants oppose Interstate's motion and cross-move to stay these proceedings.

4

## III. DISCUSSION

### A.   Standard for Judgment on the Pleadings

A Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. Fed. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  Under Rule 12(c), the movant must clearly establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citation and internal quotation marks omitted).  In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6).  Turbe, 938 F.2d at 428.  Thus, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the claimant.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

Ultimately, a district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'" (citation omitted)).  Under the Twombly/Iqbal

standard, the Third Circuit has instructed a two-part analysis. First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id. Similarly, "[a] motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Philadelphia, 338 F. App'x 261, 264 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

However, when considering a factual challenge to a court's subject matter jurisdiction -- as is the case here -- "no presumption of truthfulness attaches to the allegations in the complaint and the Court may consider matters outside the pleadings[.]" Onuchukwu v. Clinton, 2010 U.S. Dist. LEXIS 93415, at *3 (D.N.J. Sept. 7, 2010) (citing Anjelino v. N.Y. Times Co.,

6

200 F.3d 73, 87 (3d Cir. 1999)). "In doing so, 'the Court is free to weigh the evidence and satisfy itself whether it has the power to hear the case.'" Id. at *4 (quoting Carpet Group Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000)).

### B.  Lack of Jurisdiction

Interstate argues that Defendants' counterclaims must be dismissed because, pursuant to a federal statutory scheme, the Court lacks subject matter jurisdiction over those claims now that the Federal Deposit Insurance Corporation has been appointed receiver and assumed control over Interstate, a failed banking institution.  According to Interstate, the FDIC has sole authority to resolve Defendants' claims in this matter so long as they have not exhausted their administrative remedies.

Defendants counter that, *inter alia*, their claims involve New Jersey state law, not federal law, and therefore must be presented in this case pursuant to New Jersey's entire controversy doctrine.  No federal exhaustion provisions, Defendants submit, preempt their state law claims and deprive this Court of its jurisdiction to hear counterclaims steeped in state law that must be raised and decided in conjunction with the plaintiff's own claims.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") "created a new regulatory agency, the Resolution Trust Corporation, and empowered it and the FDIC to

7

manage, sell, merge, consolidate, or liquidate failed institutions for which they were appointed receiver." Centennial Assocs. v. FDIC, 927 F. Supp. 806, 809 (D.N.J. 1996) (citing 12 U.S.C. §§ 1821(d)(2) and 1441a(b)(4)). "The statute also created a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution." Id. Pursuant to FIRREA, a "depository institution" is "any bank or savings association." 12 U.S.C. § 1813(c)(1). "FIRREA authorizes the FDIC to act as a receiver of a failed state banking institution and to resolve claims against the failed institution." Rodriguez v. Indymac Bank, 2010 U.S. Dist. LEXIS 27782, at *6 (D.N.J. Mar. 24, 2010) (citing 12 U.S.C. § 1812(c)(3)).

FIRREA sets forth a claims procedure for creditors that is exclusive and limits the jurisdiction of courts. See id. at *7; see also FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991) ("Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in [12 U.S.C. §] 1821."). In particular, Section 1821(d)(13) provides:

> (D) Limitation on judicial review.
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over --
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC]

8

>               has been appointed receiver, including assets
>               which the [FDIC] may acquire from itself as
>               such receiver; or
>
>                    (ii) any claim relating to any act or
>               omission of such institution or the [FDIC] as
>               receiver.

12 U.S.C. § 1821(d)(13)(D).  "Courts have interpreted § 1821(d)(13)(D) broadly and have required exhaustion of the receivership mechanism whether those claims and actions are by debtors, creditors, or others."  Rodriguez, 2010 U.S. Dist. LEXIS 27782, at **7-8 (citing Centennial Assocs., 927 F. Supp. at 811).  "Moreover, courts have held that the exhaustion requirement applies to tort and contract claims."  Id. at *8.

As illustrated above, before a federal district court generally may exercise its jurisdiction over a cause of action against a failed depository institution in FDIC receivership, the proponent of that claim must exhaust the administrative review process established by FIRREA.[2]  See FDIC v. Wilson's Famous Blue Ribbon Meats, 835 F. Supp. 245, 246 (E.D. Pa. 1993).  In response to Interstate's motion, Defendants represent that they submitted a claim with the FDIC on November 11, 2010, asserting the same

---

[2] That Defendants' claims are asserted as counterclaims to Interstate's own causes of action against Defendants would not seem to negate or undermine the statutory necessity of administrative exhaustion.  See, e.g., FDIC v. Modular Homes, Inc., 859 F. Supp. 117, 123 (D.N.J. 1994) (dismissing counterclaim for failure to exhaust FIRREA administrative process); FDIC v. James J. Madden, Inc., 847 F. Supp. 374 (D. Md. 1994) (same).


causes of action as they have in the present suit. Given their purported compliance with FIRREA and the duration of time since they submitted their claim to the FDIC, the Court hesitates to rule on this matter without first knowing the status of the FDIC's administrative proceedings.

The Court does not read Interstate's Motion for Judgment on the Pleadings as arguing that even if Defendants properly exhausted their administrative remedies under FIRREA, they still could not pursue their counterclaims in this matter or otherwise invoke this Court's jurisdiction.[3] Along those lines, Defendants ask for a stay to these proceedings so that they may exhaust their administrative review before the FDIC and then litigate their counterclaims in this suit, concurrent with Interstate's prosecution of their own claims. Before deciding whatever jurisdiction over Defendants' counterclaims it may have, the Court wishes to know the validity and status of the FDIC's administrative review and whether that process has any further bearing on the Court's determination. In other words, the Court asks: has the FDIC addressed Defendants' claim purportedly submitted on November 11, 2010, and if so, how should that affect Defendants' counterclaims in this matter moving forward? Conversely, if the FDIC has not addressed Defendants' claim, then

---

[3] Should that be Interstate's argument, then Interstate may wish to clarify and support it in the supplemental briefing described *infra*.

what is the proper course of action for this Court to take?

Informing this inquiry is the fact that several months have elapsed since Defendants filed their claim with the FDIC.[4]  An update as to those proceedings may be informative and even dispositive to the present matter and a determination of jurisdiction.

Therefore, for the reasons stated above, Defendants' Cross-motion to Stay is granted in part.[5]  Defendants shall have twenty (20) days from the date of this Opinion to respond accordingly to those matters raised by the Court in this Opinion.  Interstate

---

[4] According to Defendants, citing 12 U.S.C. § 1821(d)(5)(A)(i), the FDIC has six months to decide Defendants' claim from the time they filed it. See Wilson's Famous Blue Ribbon Meats, 835 F. Supp. at 247 ("12 U.S.C. § 1821(d)(5)(A) then grants the receiver 180 days to respond to the claim.  If the receiver disallows the claim or does not respond to the claim within 180 days, the claimant may, within sixty days, request further administrative review or judicial review.  12 U.S.C. § 1821(d)(6)(A).").

[5] The present circumstances differ from those in other cases where a court lacked jurisdiction over the proceedings and therefore could not properly stay them.  First, no matter the ultimate disposition of Defendants' counterclaims, the Court has jurisdiction over Interstate's claims and, thus, the parties involved in this case.  Second, in this Opinion, the Court is not staying this matter until the FDIC completes its administrative process; rather, the Court simply is staying its disposition of Interstate's motion until the Court receives supplemental briefing as requested.  Whether a broader stay of the proceedings is appropriate, necessary, or even plausible is a question to be answered after receipt of those briefs.  Lastly, the purpose of the Court's temporary stay is to gather more information so that it may correctly determine its own jurisdiction.  The Court certainly has the ability, and indeed the obligation, to assure itself of its authority to hear a case or a particular cause of action.  See Onuchukwu, 2010 U.S. Dist. LEXIS 93415, at **3-4.

shall then have ten (10) days to respond to Defendants' submission and the Court's Opinion.  Until it receives the parties' submissions, the Court shall stay any further consideration of Interstate's Motion for Judgment on the Pleadings and Defendants' cross-motion.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Cross-motion to Stay is granted in part.  Defendants shall have twenty (20) days from the date of this Opinion to submit a supplemental brief addressing those issues raised in this Opinion.  Interstate shall then have ten (10) days from the date of Defendants' submission to respond.  Until it receives the parties' supplemental submissions, the Court will stay any further consideration of Interstate's Motion for Judgment on the Pleadings and Defendants' cross-motion.  An Order consistent with this Opinion will be entered.


Dated: June 13, 2011                    /s/ NOEL L. HILLMAN
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.